**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>21-994</u>

WILDEARTH GUARDIANS,

        Plaintiff,

v.

MICHAEL S. REGAN, in his official capacity as
Administrator of the United States Environmental
Protection Agency,

        Defendant.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

**INTRODUCTION**

1. The EPA is failing to take timely action to ensure Colorado is on track to protect people from harmful ground-level ozone pollution, the key ingredient of smog.

2. Under the Clean Air Act, all areas of the country are legally entitled to healthy, clean air. For more than a decade, however, high ozone pollution levels in the Denver Metro-North Front Range region in Colorado have exceeded federal air quality standards and threatened public health. Communities in Adams, Arapahoe, Boulder, Broomfield, Denver, Douglas, Jefferson, Larimer, and Weld Counties are all impacted.

3. Ground-level ozone, the primary component of smog, is a poisonous gas created when volatile organic compounds ("VOCs") and nitrogen oxides ("NOx"), emitted from tailpipes, smokestacks, and oil and gas production, react with sunlight. Ozone poses numerous adverse health and environmental impacts. Public health impacts from ozone exposure range

from respiratory irritation and impairment of breathing to heart damage, hospitalization, and an increased risk of premature death. Ground-level ozone further harms growing plants, causes defoliation of trees and crops, and can impair the healthy functioning of entire ecosystems.

4. Colorado was required to submit a plan to clean up ozone pollution in the Denver Metro-North Front Range region by August 3, 2020. The state failed to do so. By law, EPA was required by February 3, 20201 to make a determination that Colorado failed to submit its plan. EPA failed to do so.

5. If EPA would have made its legally required finding, it would have triggered a two-year deadline for Colorado to get a cleanup plan approved or for EPA to develop its own plan. EPA's delay is effectively denying clean air for the Denver Metro-North Front Range region.

6. WildEarth Guardians ("Guardians") brings this action for declaratory and injunctive relief to enforce a mandatory deadline set forth in the Clean Air Act and to compel EPA to act for clean air. Guardians seeks a declaration that the Administrator violated his non-discretionary duty to find that Colorado failed to submit a plan to reduce ozone levels in the Denver Metro/North Front Range Area as required by the Clean Air Act. Guardians also seeks an order compelling the Administrator to fulfill his statutorily-mandated duty to make such a finding by a date certain.

**JURISDICTION, NOTICE AND VENUE**

7. This is an action against the Administrator alleging a failure of the Administrator to perform a nondiscretionary act or duty under the Clean Air Act. Thus, this Court has jurisdiction pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question).

8. The requested declaratory relief is authorized by 28 U.S.C. § 2201(a) and 42 U.S.C. § 7604(a). The requested injunctive relief is authorized by 28 U.S.C. § 2202 and 42 U.S.C. § 7604(a).

9. By letter dated February 4, 2021, Guardians provided EPA, via U.S. Certified Mail, written notice of the claim concerning EPA's failure to take action on Colorado's failure to submit a legally required ozone cleanup plan. Guardians provided this notice pursuant to 42 U.S.C. § 7604(b)(2), and 40 C.F.R. §§ 54.1, 54.2 and 54.3. Although more than 60 days have elapsed since Guardians gave notice, EPA has not taken the non-discretionary action demanded by Guardians and remains in violation of the law.

10. As EPA has failed to redress the Clean Air Act violations set forth in Guardians' notice letter, there exists now between the parties an actual, justiciable controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e). EPA maintains a Regional Office in Denver, Colorado, which oversees air quality in Colorado, including monitoring compliance with the Ozone Standards in the Denver Metro-North Front Range region. The Regional Office is, in part, responsible for ensuring the Administrator performs the nondiscretionary duty at issue in this Complaint, and a substantial part of the events or omissions giving rise to Guardians' claims occurred in EPA's Regional Office in Denver. Guardians also maintains a major office in Wheat Ridge, a suburb of Denver in Jefferson County.

**PARTIES**

12. Plaintiff WILDEARTH GUARDIANS is a non-profit conservation organization. Guardians is dedicated to protecting and restoring wildlife, wild rivers, wild places, and health in

the American West. Through its Climate and Energy Program, Guardians works to safeguard the Earth's climate and air quality  Guardians and its members work to reduce harmful air pollution in order to safeguard public health, welfare, and the environment. WildEarth Guardians has approximately 178,000 members and activists, many of whom live, work, or recreate in Colorado and particularly within the Denver Metro-North Front Range region.

13. As a non-profit corporation, Guardians is a "person" within the meaning of 42 U.S.C. § 7602(e). As such, Guardians may commence a civil action under 42 U.S.C. § 7604(a).

14. Guardians' members live, work, recreate, and conduct educational, research, advocacy, and other activities within the Denver Metro-North Front Range ozone nonattainment area in Colorado, in areas where air pollution, the emission of which should be regulated under the SIP submittal at issue in this case, harms these activities. These members recreate outdoors frequently, commute to work on bicycle, and depend on clean air for their quality of life. Their ability to fully enjoy the outdoor amenities offered by the Denver Metro-North Front Range region, including hiking, biking, wildlife viewing, camping, picnicking, and outdoor sports, are harmed by the failure of the Administrator to perform his nondiscretionary duty. They are also reasonably concerned regarding the short- and long-term health consequences of repeated exposure to high levels of ozone pollution. This harm stems primarily from the Administrator's failure to ensure that air quality is sufficiently protected in a timely manner, as mandated by the Clean Air Act. This harm would be eliminated or reduced if the Administrator performed his nondiscretionary duty to issue a finding that Colorado failed to submit a plan that ensures the Denver Metro-North Front Range region complies with ozone standards.

15. The violation at issue in this complaint relates to the Administrator's failure to ensure that Colorado is cleaning up its ozone pollution in accordance with statutory deadlines by

making a finding that Colorado has not submitted a revised ozone cleanup plan. By failing to meet this deadline, EPA failed to trigger the two-year deadline for the agency to either fully approve a state plan or promulgate a federal plan. The Administrator's failure delays Guardians' members the healthy air quality mandated by the Clean Air Act. The Administrator's failure also means that the deadline for the region to achieve attainment with the federal ambient ozone standard by July 20, 2021 will likely not be met, and attainment of the ozone standard will be further delayed until the Administrator issues a finding relating to Colorado's failure to submit a revised ozone cleanup plan. By failing to ensure that Colorado's ozone cleanup plan is submitted in accordance with the Clean Air Act, the Administrator is denying Guardians' members the timely clean air that would otherwise result if he followed the statutory deadlines for action.

16. The Administrator's unlawful delay has injured and continues to injure the interests of Guardians and its members by forcing the Denver Metro-North Front Range region – including Guardians' staff and members – to endure greater air pollution and public health risks than permitted by the Clean Air Act. This air pollution will continue unabated so long as the EPA fails to ensure that effective plans are in place to clean up ozone pollution.

17. Guardians' and its members' injuries are traceable to Defendant's failure to act. Granting the requested relief would redress these injuries by compelling EPA action that Congress determined to be an integral part of the regulatory scheme for attaining and maintaining air quality standards and for making reasonable progress towards achieving healthy air quality and reducing smog in the Denver Metro-North Front Range nonattainment area.

18. Defendant MICHAEL S. REGAN is Administrator of the United States Environmental Protection Agency. Mr. Regan is sued in his official capacity. The Administrator is charged with implementation and enforcement of the Clean Air Act. As described below, the

Clean Air Act assigns EPA certain non-discretionary duties.

## LEGAL FRAMEWORK

19. The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of national air quality goals. 42 U.S.C. §§ 7401-7515. This system is intended to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 91-1146, at 1 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5356, 5356. Towards this end, EPA has established National Ambient Air Quality Standards ("NAAQS") for seven pollutants, including ozone. 40 C.F.R. Part 50.4-50.13.

20. States, or regions within a state, must adopt a pollution control plan that contains enforceable emissions limitations necessary to attain the NAAQS and meet applicable requirements of the Clean Air Act, including ensuring attainment, maintenance, and enforcement of the NAAQS. *See, e.g.,* 42 U.S.C. §§ 7410(a)(1), (a)(2)(A), 7502(c)(6). All such plans must be submitted to and approved by EPA. 42 U.S.C. § 7410(a)(1), (k). These cleanup plans are referred to as State Implementation Plans (SIPs).

21. When a region violates the NAAQS, the EPA designates it a "nonattainment" area. 42 U.S.C. § 7407(d). For nonattainment areas, the Clean Air Act provides specific deadlines and requirements for SIPs to ensure that the NAAQS are attained and ultimately that "nonattainment" areas can be redesignated as "attainment" areas. These requirements are set forth under Part D of the Clean Air Act. 42 U.S.C. § 7501, et seq.

22. For ozone, the EPA classifies nonattainment areas according to the severity of the pollution problem. 42 U.S.C. § 7511(a). These classifications include marginal, moderate, serious, severe, and extreme. *Id.* Under each classification, States must meet deadlines both for

submitting SIPs to demonstrate attainment with ozone NAAQS and for attaining the ozone NAAQS. 42 U.S.C. §§ 7511(a) and 7511a.

23. The Clean Air Act requires EPA to determine "no later than 6 months after the date by which a state is required to submit a SIP whether a state has made a submission that meets the minimum completeness criteria established pursuant to [42 U.S.C. § 7410(k)(1)(A)]." 42 U.S.C. § 7410(k)(1)(B). Where a state has failed to make a required SIP submission, EPA is required to issue a "finding of failure to submit." A finding of failure to submit is a simple determination by EPA that is published as a Final Action in the Federal Register. *See e.g.* 85 Fed. Reg. 72,963 (Nov. 20, 2020).

24. When EPA finds that a State has failed to make a required SIP submission, a two-year clock begins. Within this timeframe, either a State must submit and EPA must fully approve the required SIP submission or EPA must promulgate a Federal Implementation Plan. 42 U.S.C. § 7410(c)(1)(A). A FIP is "a plan (or portion thereof) promulgated by [EPA] to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a [SIP], and which includes enforceable emission limitations or other control measures, means or techniques (including economic incentives, such as marketable permits or auctions of emissions allowances), and provides for attainment of the relevant [NAAQS]. 42 U.S.C. § 7602(y).

25. If EPA fails to comply with a nondiscretionary duty, the Clean Air Act allows any person to bring suit to compel EPA to perform its duty. 42 U.S.C. § 7604(a)(2).

**FACTUAL BACKGROUND**

26. To protect public health and welfare, the EPA has established NAAQS for ground-level ozone. Since ozone NAAQS were first established, they have been revised and strengthened over the years to ensure protection of public health and welfare.

27. In 2008, EPA finalized a revision to the ozone NAAQS, adopting a standard limiting ozone concentrations in the air to no more than 0.075 parts per million over an 8-hour period. 40 C.F.R. § 50.15. In May 2012, EPA made nonattainment designations for the 2008 ozone NAAQS. 77 Fed. Reg. 30,088 (May 21, 2012).

28. At the time, the Denver Metro/North Front Range region was violating the 2008 NAAQS. Accordingly, EPA designated the region a 'marginal' nonattainment area. 77 Fed. Reg. 30,088, 30,110. Colorado was required to attain the 2008 ozone NAAQS within three years of its nonattainment designation. 40 C.F.R. § 51.1103(a).

29. Unfortunately, Colorado failed to take sufficient action between 2012 and 2015 to improve air quality. The Denver Metro-North Front Range region remained in violation of the 2008 ozone NAAQS as of the July 20, 2015 attainment deadline. Accordingly, in August 2015, EPA issued a proposed finding that the area had failed to attain the NAAQS for ozone and proposed reclassifiying the region as a 'moderate' nonattainment area. 80 Fed. Reg. 51,992, 51,998 (Aug. 27, 2015).

30. On May 4, 2016, EPA issued a final rule officially reclassifying the Denver Metro/North Front Range area as a 'moderate' nonattainment area based on the region's failure to attain the 2008 ozone NAAQS. *See* 81 Fed. Reg. 26,697, 26,699 (May 4, 2016).

31. As a result of EPA's reclassification as 'moderate,' Colorado was required to attain the 2008 ozone NAAQS "as expeditiously as practicable," but no later than July 20, 2018. 81 Fed. Reg. 26,697, 26,699.

32. The July 20, 2018 deadline passed, however, and the Denver Metro-North Front Range region still remained in violation of the 2008 ozone NAAQS. On August 15, 2019, EPA proposed to determine that the region failed to attain the 2008 ozone NAAQS by that applicable

July 20, 2018 attainment deadline. 84 Fed. Reg. 41674, 41675 (Aug. 15, 2019).

33. In December 2019, EPA issued a final determination that the area had failed to attain the ozone NAAQS and formally reclassified the region as a 'serious' nonattainment area for the 2008 ozone NAAQS. 84 Fed. Reg. 70,897 (Dec. 26, 2019).

34. Under the serious classification, Colorado was required to submit a SIP revision to EPA by August 3, 2020 demonstrating the region will achieve attainment by July 20, 2021. 84 Fed. Reg. 70,897, 70,898, 70,900; *see also* 42 U.S.C. § 7511(a)(1); 40 C.F.R. § 51.1103(a). Colorado did not timely submit a SIP revision to EPA pursuant to this requirement.

35. In accordance with Section 110(k)(1)(B) of the Clean Air Act, the Administrator of the EPA was required to make a finding by February 3, 2021 that Colorado had failed to submit its legally required SIP revision. *See* 42 U.S.C. § 7410(k)(1)(B).

36. The duty to make this "finding of failure to submit" is nondiscretionary under the Clean Air Act.

37. Upon making this finding, a two-year, mandatory deadline would have been established during which EPA would be required to adopt a FIP or Colorado would have to submit and EPA fully approve of the legally required SIP submission.

38. Because EPA has failed to make its finding that Colorado failed to submit its legally required SIP revision, no two-year deadline has been established to ensure action to attain the 2008 ozone NAAQS in the Denver Metro-North Front Range region. If EPA would have acted in a timely manner, the two-year deadline would have been no later than February 3, 2023.

39. As of the filing of this Complaint, EPA has failed to make a finding that Colorado failed to submit its legally required SIP revision.

**CLAIM FOR RELIEF**
**Failure to Perform a Nondiscretionary Duty to Act on Colorado's Failure to Submit the Required SIP Revision**

40. Plaintiff incorporates by reference all the preceding allegations in this Complaint.

41. Colorado had a deadline to submit a revised SIP to the EPA by August 3, 2020 that demonstrates attainment of the 2008 ozone NAAQS by July 20, 2021.

42. Colorado did not meet this deadline.

43. In accordance with Section 110(k)(1)(B) of the Clean Air Act, the Administrator of the EPA was required to make a finding by February 3, 2021 that Colorado had failed to submit its legally required SIP revision. 42 U.S.C. § 7410(k)(1)(B).

44. EPA failed to make a finding that Colorado had failed to submit its legally required SIP revision, in violation of a nondiscretionary duty under the Clean Air Act. 42 U.S.C. § 7410(k)(1)(B).

45. This violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2).

46. EPA's violation is ongoing and will continue unless remedied by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff WildEarth Guardians requests that this Court enter judgment providing the following relief:

A. A declaration that EPA has violated and continues to violate the Clean Air Act by failing to make the required finding that Colorado failed to submit the required SIP as detailed above;

B. An injunction compelling EPA to make the required finding within 15 days or at

least as expeditiously as possible and by a date certain;

      C.     An injunction ordering that upon making its finding, EPA either promulgate a FIP or fully approve Colorado's legally required SIP submission as expeditiously as possible, but no later than February 3, 2023;

      D.     An order retaining jurisdiction over this matter until such time as EPA has complied with its non-discretionary duty under the Clean Air Act;

      E.     An order awarding Guardians its costs of litigation, including reasonable attorneys' fees, pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(d); and

      F.     Such other and further relief as the Court deems just and proper.

Respectfully submitted this 8th day of April, 2021,

                                            */s/ Katherine Merlin*
                                            Katherine Merlin
                                            WildEarth Guardians
                                            3798 Marshall St., Suite 8
                                            Wheat Ridge, CO 80033
                                            Tel. 720.965.0854
                                            kmerlin@wildearthguardians.org

                                            */s/ Daniel Timmons*
                                            Daniel Timmons
                                            WildEarth Guardians
                                            301 N. Guadalupe Street, Suite 201
                                            Santa Fe, NM 87501
                                            (505) 570-7014
                                            dtimmons@wildearthguardians.org